Metcalf, J.
The sole question in this case is, whether Luke B. Miller, who is summoned as trustee of Matthews, the principal debtor, is chargeable as such. He has answered various interrogatories, and from his answers, taken together, we collect the following facts: The process was served on him, on Saturday, February 10th, 1849, by leaving a copy thereof at his dwelling-house. He was absent at that time, and did not return home till Sunday evening, February 11th, when he first had knowledge of the service. Matthews had worked for him nearly two years, at $6.50, weekly wages, (being employed in his retail shop,) and had always received his wages, as he wanted them, and had kept his own account on Miller’s book; crediting what he received, whether in money or goods. On the 10th of February, 1849, Miller owed him $16.07; and on Miller’s going to his shop, early on Monday morning, February 12th, he found that Matthews had given him credit, on his book, for $16 in money, and $7 for a barrel of flour, as received on the 10th; and he found, by his cash account, that the sum of $16 had been withdrawn, but did not ascertain whether a barrel of flour had been taken away.
In connection with these facts, stated in Miller’s answer, he makes this further statement: 11 On the tenth of February, I paid him” (Matthews) “ 14lbs. of flour, for 49 cents, one barrel of flour, for $7, and cash $16.”
We infer from the whole answer, taken together, that Miller had confidence in Matthews’s integrity, and had, either expressly or tacitly, authorized him to take money, or goods, or both, when he pleased, in payment of his wages, and to keep his own account on Miller’s books; and that, in this instance, Matthews had taken, on the 10th of February, somewhat more than the amount then due to him, and had given Miller credit therefor.
Upon this understanding of Miller’s answers, we are of opinion that he cannot be charged as trustee of Matthews; but that the facts disclosed operated as a payment, on the 10th of *546 February, of all that Miller owed him. It is immaterial whe« ther this payment is to be considered as made before or after the trustee process. The hour of the service is not made Known to us. But this is unimportant. The payment was made before Miller knew of the service, and such payment, when made in good faith, is protected by the Rev. Sts. c. 109, §5. ...
G. N. Emerson, for the trustee.
I Sumner, for the plaintiff.
... It was argued for the plaintiff, that if the facts disclosed show payment, it was not a payment in good faith, within the meaning of the statute; as Matthews must be presumed to have taken to himself the money and the barrel of flour, for the purpose of defeating the trustee process. Very probably it was so. But it is clear, that by payment in good faith, the statute means the good faith of the party paying, and not of the party receiving. And if, as we understand the answers, Miller had authorized Matthews to take his pay, at his pleasure, and he took it after he knew that the trustee process had been served, but before Miller knew that fact, Miller could not have retracted that authority, after having knowledge of the service, without a violation of good faith. The authority, given to Matthews to take his pay as he wanted it, must be deemed to have been honestly and fairly given, and the very taking of the money and flour, at least to the amount due to him for wages, constituted a payment, with the same legal consequences as if Miller, at his request, had given him the same with his own hand, and taken a receipt.

Trustee discharged.